HUNTLEY *v.* MOTOR WHEEL CORPORATION

1. NEGLIGENCE—INSTRUCTIONS TO JURY.

Contention that trial court erred in refusing to instruct the jury that the defendant's duty of due care to third parties regarding such an inherently dangerous instrumentality as high-voltage electricity could not be delegated away is without merit where the court did, in fact, instruct that if the defendant had any duty it could not be delegated.

2. NEGLIGENCE—DUTY—LANDLORD AND TENANT.

Instruction to jury that defendant landlord was liable for an injury caused by a defect in the electrical system of its building only if it retained control over the electrical system, or had actual knowledge of defects in it, given as part of the law applicable to the landlord-tenant relationship, was proper.

3. TRIAL—INSTRUCTIONS TO JURY.

The test of instructions to the jury is: Did the instructions as given adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims in the particular case?, when they are objected to as being so lengthy, conflicting, ambiguous, and erroneous as to be unmeaningful and incomprehensible.

4. NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITY—VICARIOUS LIABILITY.

The inherently dangerous activity doctrine is closely akin to strict liability and an employer's duty to provide against

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence § 369.
 53 Am Jur, Trial § 527.
[2] 49 Am Jur 2d, Landlord and Tenant § 880.
[3] 53 Am Jur, Trial § 539 *et seq.*
[4, 5] 41 Am Jur 2d, Independent Contractors § 37 *et seq.*
[6] 26 Am Jur 2d, Electricity, Gas, and Steam §§ 39, 53.

negligence as may be commensurate with the obvious dangers involved only arises where the employer is doing, or is causing to be done, work necessarily involving danger to others unless great care is used.

5. NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITY—VICARIOUS LIABILITY.

An employer is vicariously liable for an independent contractor's negligence under the inherently dangerous activity doctrine, without proof of culpable negligence on the employer's part, only when the work itself is of such a nature that it would inevitably and unavoidably result in danger to others unless great care was used to prevent injury.

6. NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITY—VICARIOUS LIABILITY.

Defendant was not vicariously liable, without proof of culpable negligence on its part, for plaintiff's injury, which was not inevitable from plaintiff's work as an electrician employee of an independent contractor where plaintiff was in fact injured by an instrumentality incidental to work being performed by the independent contractor for defendant.

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 June 4, 1970, at Lansing. (Docket No. 7347.) Decided March 22, 1971. Leave to appeal denied March 17, 1972, 387 Mich —.

Complaint by Glen Huntley and Dorothy Huntley against Motor Wheel Corporation for negligence. Verdict and judgment of no cause of action. Plaintiffs appeal. Affirmed.

*Parks, Church & Wyble* (by *Richard Robinson*) for plaintiffs in the initial brief on appeal.

*Wilfred A. Dupuis,* supplemental brief on appeal for plaintiffs.

*Domke, Marcoux, Allen & Beaman* (by *William J. Marcoux*) for defendant.

Before: Lesinski, C. J., and Quinn and Rood,* JJ.

Rood, J.   This appeal, alleging improper jury instructions, arises out of an industrial accident which occurred on April 17, 1964.   Plaintiff was severely burned when an electrical switch he was operating exploded at the Centrifugal Fusing Company in Lansing, Michigan, where he was employed as a plant electrician.   The plant building and some of the electrical equipment was owned by the defendant and had been leased to Campbell, Wyant and Cannon Foundry Company by a lease agreement dated October 10, 1936.   Campbell, Wyant and Cannon sublet the premises to Centrifugal Fusing Company by an agreement and lease dated July 31, 1937.   The term of this lease was extended to December 31, 1966, by an agreement dated September 18, 1953.   The lease agreement provided that Campbell, Wyant and Cannon was to keep the premises in good repair during the term of the lease.

The defendant had a manufacturing agreement with Campbell, Wyant and Cannon dated October 10, 1936, which provided that the defendant would purchase all of the brake drums produced at the plant and would pay all costs of production, including power.   Campbell, Wyant and Cannon operated the plant through Centrifugal Fusing Company, a wholly-owned subsidiary.   In 1957 Campbell, Wyant and Cannon sold all of its assets, including its interest in the Lansing plant, to Textron, Inc.   At the time of the accident (April 17, 1964) Centrifugal Fusing Company was a division of Campbell, Wyant and Cannon which, in turn, was a division of Textron, Inc.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The operating equipment in the plant, including the No. 5 turntable, No. 5 induction heater, and the switch above B furnace, was owned by Campbell, Wyant and Cannon. The equipment in the power house, including the switch that exploded, was owned by the defendant. This switch was installed in 1952 or 1953. Centrifugal Fusing Company maintained and repaired all of the equipment in the plant, including the electrical switches, as provided for in the lease agreement. The electrical work was done by Centrifugal Fusing Company's plant electricians; however, they occasionally called in outside electrical contractors. All of the employees in the plant, including the plaintiff, were hired and trained by Campbell, Wyant and Cannon or Centrifugal Fusing Company. On the day of the accident the No. 5 induction heater malfunctioned, the result being that the electricity failed to turn off automatically. This situation was not unusual in that it had happened on many occasions before. The malfunction was made known to the plaintiff and he responded. The testimony is conflicting as to whether or not the plaintiff went into the power house to turn off the electricity so that he could work on the induction heater and switch or whether he had previously worked on the heater and switch and was going back into the power house to turn the electricity back on. It seems clear from the testimony that the plaintiff used the isolating switch, which was referred to as an oil-fused cut-out switch, rather than the switch over B Furnace, and that when he operated it, it exploded, causing him to be sprayed with hot oil and seriously burned.

The plaintiff began working for Centrifugal Fusing Company in the year 1953 as a laborer and bid in the job of electrician approximately one and one-half years before the accident. Plaintiff was trained

by the chief electrician of Centrifugal Fusing Company and had been shown how to do the work. The testimony is conflicting as to whether or not the plaintiff had been instructed fully as to the procedure to be followed when the induction heater malfunctioned.

The plaintiffs charged the defendant with negligence and gross negligence in failing to provide and install proper switches, failing to inspect and repair the machinery and switches, failing to install proper warning signs, failing to maintain men in its employ with sufficient education and knowledge to install, maintain, and operate the equipment, and in failing to maintain safety standards. The defendant denied that it was guilty of any negligence or gross negligence or that it had failed to perform any duties that it may have owed to the plaintiffs. The defendant raised the affirmative defense of contributory negligence.

The jury found no negligence, either gross or ordinary, on the part of the defendant.

The plaintiffs (appellants) raise three questions in their initial brief and two additional questions in their supplemental brief.

The first question raised by plaintiffs is that the court, after instructing the jury that high-voltage electricity is inherently dangerous, erred in refusing to instruct the jury that the defendant's duty of due care as to third parties regarding such a dangerous instrumentality could not be delegated away.

Plaintiff's requested instruction number 6 is as follows:

"I further charge you if you find the defendant Motor Wheel Corporation attempted to delegate to Centrifugal Fusing Company or Campbell, Wyant

and Cannon or anyone else the care and maintenance of the high voltage electricity which caused the harm, this does not, in any manner, excuse the defendant Motor Wheel Corporation from liability, if, in fact, you find there was negligence in the care and maintenance of the high voltage electricity and that said negligence in the care and maintenance of the high voltage electricity was the proximate cause of the injury to Mr. Huntley."

The lower court did instruct as follows in connection with the first claimed error as set forth by the plaintiff:

"In determining whether or not the defendant had a duty to the plaintiff to use reasonable care to prevent injury, and whether or not defendant breached that duty, you may consider the fact that high voltage electricity is inherently dangerous and thus the law imposes the duty upon the person transmitting high voltage electricity that degree of care and prudence which reasonable men would use under all the facts and circumstances. The degree of care which will satisfy this requirement will vary with the danger or with the extent of possible injury which might be incurred under all of the circumstances."

\*     \*     \*

"However, if you find that Motor Wheel Corporation had a duty toward Mr. Huntley, and attempted to delegate that duty to Centrifugal Fusing Company, Campbell, Wyant and Cannon, Textron, or to anyone else, this does not in any way relieve the defendant of negligence *if you find that the defendant breached that duty,* and that the negligence was a proximate cause of Mr. Huntley's injuries, and except as I otherwise instruct you, Mr. Huntley was in turn free of any negligence which proximately contributed to his injuries." (Emphasis supplied.)

It is apparent from the foregoing that the lower court did, in fact, instruct the jury that the duty of

the defendant, if any existed in connection with the handling of high voltage electricity and its inherently dangerous characteristics, could not be delegated to Centrifugal Fusing Company, Campbell, Wyant and Cannon, Textron, or to anyone else.

The second contention of the plaintiffs is that the lower court instructed the jury on the incidents of the landlord-tenant relationship but did not instruct that the landlord would be unable to delegate duties when the activity carried on by the lessee was "inherently dangerous".

Plaintiffs cite no authority for their contention that the doctrine of nondelegable duties applies to a landlord-tenant relationship and this court has found no such authority. No claim is made that the law applicable to the landlord-tenant relationship was erroneous as given by the court. The only contention is that regardless of the fact that the jury may have found such relationship to exist as a matter of fact, nevertheless, the lower court should have instructed that defendant could not delegate its responsibility because of the "inherently dangerous activity" rule.

We find no error in the lower court's instructions in relation to the law applicable to landlord and tenant.

The third contention of plaintiffs is that the lower court erred in instructing that defendant was liable only if it retained control over the electrical system, or had actual knowledge of defects therein. The instructions given were proper since they were given as part of the law applicable to the landlord-tenant relationship, in case the jury should determine that such a status existed as a matter of fact.

Plaintiff, in his supplemental brief, raises the contention that the instructions of the lower court were so lengthy, conflicting, ambiguous, and erroneous

as to be unmeaningful and incomprehensible to the
jury. We have examined the instructions carefully
and we cannot say that the instructions taken as a
whole were erroneous on these grounds. In the case
of *Huffman* v. *First Baptist Church of Flushing*
(1959), 355 Mich 437, 446, the Supreme Court said:

"It follows that the job of an appellate court in
appraising jury instructions (usually given by the
busy trial judge immediately following the tug and
heat of the trial) is not to determine whether we
would select his instructions as models of literary
excellence and pearls of legal wisdom were we edit-
ing a form book on the subject; rather our role is
mercifully more limited and our test less severe,
namely: Did the instructions as given adequately
inform the jury on the applicable law reflecting and
reflected by the various evidentiary claims in the
particular case? In other words, in the idiom of
the day, we simply ask ourselves: Were the instruc-
tions understandable and did they give both sides
a 'fair shake'? We must not also demand the subtle
reasoning of a Socrates or the gem-like prose of a
Walter Pater. Few jury verdicts anywhere would
stand if that were the criterion."

Plaintiffs have argued throughout their brief, not
only in connection with their first assignment of
error, but also in connection with the other two,
that the lower court erred in refusing to instruct the
jury on the law applicable to the vicarious liability
of the defendant. Plaintiffs contend that in addition
to the question raised regarding high voltage elec-
tricity and its inherently dangerous characteristics,
defendant should be held on the theory that the oil
cut-out switch which was a part of the equipment in-
side the plant and which was leased to plaintiff's
employer was in fact an inherently dangerous in-
strumentality. In support of this proposition plain-

tiff has cited the case of *Vannoy* v. *City of Warren* (1968), 15 Mich App 158.  On pages 163, 164, the Court says:

> "In Michigan the inherently or intrinsically dangerous activity doctrine is founded upon a theory which is closely akin to, but not exactly the same as,[5] strict liability.  The principle is applied 'where a duty is imposed upon the employer in doing work necessarily involving danger to others, unless great care is used, to make such provision against negligence as may be commensurate with the obvious danger.  It is this duty which cannot be delegated to another so as to avoid liability for its neglect.' *Inglis* v. *Millersburg Driving Association* (1912), 169 Mich 311, 321, 322.  The doctrine imposes a nondelegable duty upon the party desiring the dangerous undertaking.  See 23 ALR 1024."

---

[5] Absolute liability is not imposed by the doctrine.  23 ALR 1094.

The principle of vicarious liability was also set fourth in the case of *Mulcahy* v. *Argo Steel Construction Company* (1966), 4 Mich App 116.  On page 127, the court says:

> "Under this theory, commonly referred to as the 'inherently dangerous activity' theory, the general contractor or employer is held liable not for his own culpable negligence, but for the negligence of the independant contractor engaged in an activity of such a character that it necessarily subjects third persons to unusual danger.  Thus, the general contractor is made vicariously liable for the negligent acts of the independent contractor.  See Prosser on Torts (3d ed), § 70."

Under the evidence in this case we must hold that the lower court was not in error in refusing to instruct on a theory of vicarious liability.  As pointed out in *Vannoy* v. *City of Warren,* the inherently or

intrinsically dangerous activity doctrine is closely akin to strict liability. The duty to make such provision against negligence as may be commensurate with the obvious dangers involved only arises where the employer is doing, or is causing to be done, "work necessarily involving danger to others unless great care is used." In order to apply this doctrine it must appear that the work itself was of such a nature that it would inevitably and unavoidably result in danger to others unless great care was used to prevent injury. The facts of this case are such that it cannot be said that plaintiff's injury was inevitable and that, therefore, the defendant should be held vicariously without proof of culpable negligence on its part. It would appear that the plaintiff was in fact injured by an instrumentality incidental to the work being performed by the independent contractor.

The judgment of the lower court is affirmed with costs to the defendant.

All concurred.