PHILLIPS v MAZDA MOTOR MANUFACTURING (USA)
CORPORATION

Docket No. 129936. Submitted November 10, 1993, at Lansing. Decided April 4, 1994, at 9:20 A.M.

William G. Phillips and Bonnie L. Thompson, as copersonal representatives of the estate of William P. Phillips, deceased, brought a wrongful death action in the Wayne Circuit Court against Mazda Motor Manufacturing (U.S.A.) Corporation, Kajima International, Inc., Andrew Elliot & Associates, and others, after the plaintiffs' decedent was killed in an accident during the construction of Mazda's automobile factory. Mazda owns the real estate where the accident occurred, Kajima was the general contractor, and Andrew Elliot & Associates was the architect and engineer for the project. The decedent was a structural ironworker employed by Steelcon, Inc., a subcontractor. The court, J. Phillip Jourdan, J., entered a judgment consistent with the jury's verdict against Mazda, Kajima, and Andrew Elliot & Associates. The defendants' motions for a new trial, judgment notwithstanding the verdict, and remittitur were denied. Mazda, Kajima, and Andrew Elliot appealed.

The Court of Appeals *held:*

1. A question of fact existed concerning whether the decedent's work was inherently dangerous. The evidence weighed decisively in favor of the jury's conclusion that the work was inherently dangerous.

2. The evidence was sufficient to support a finding that a common work area existed. The common work area rule was applied properly in this case.

3. There was no evidence that Mazda retained any degree of control over the construction of its factory. However, Mazda's motion for a directed verdict and judgment notwithstanding the

REFERENCES

Am Jur 2d, Appeal and Error § 880; Building and Construction Contracts §§ 135-137; Damages §§ 1021-1028; Expert and Opinion Evidence §§ 53-67; Independent Contractors §§ 41, 42; Master and Servant §§ 195-197; Negligence § 1172; Trial §§ 190, 566, 618-620, 1093, 1120 *et seq.*

Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.

verdict properly were denied because Mazda could still be liable under the inherently dangerous activity doctrine.

4. There was sufficient evidence regarding Kajima's control over the steel framework construction for reasonable jurors to conclude that Kajima retained control of Steelcon's work.

5. The plaintiffs carried their burden of proving the applicable standard of professional care and its breach by Andrew Elliot & Associates.

6. Any alleged improper remarks by plaintiffs' counsel regarding liability insurance were harmless and did not warrant the granting of a new trial.

7. The trial court did not abuse its discretion in refusing to strike the testimony of Steelcon's superintendent. The witness' experience was sufficient to qualify him as an expert witness and his opinion was not speculative.

8. The jury's finding of no comparative negligence regarding the decedent was not against the great weight of the evidence.

9. The trial court did not err in refusing to use certain of the defendants' proposed jury instructions, and any error regarding the instructions that were given was harmless.

10. The jury's award was supported by the evidence. Remittitur was not mandatory.

Affirmed.

1. Negligence — Master and Servant — Independent Contractors — Inherently Dangerous Activities.

An employer of an independent contractor generally is not liable for the contractor's negligence; an exception exists where the independent contractor is hired to do work that either necessarily involves danger to others unless great care is used or poses a peculiar risk of harm to others; the special risk of danger must be recognizable in advance, at the time the work is contracted; the question whether a job is inherently dangerous is a question of fact for the jury.

2. Negligence — Master and Servant — General Contractors — Subcontractors — Common Work Areas — Readily Observable and Avoidable Dangers.

A general contractor may be liable for a subcontractor's negligence where the general contractor fails to take reasonable precautions against readily observable, avoidable dangers in common work areas that create a high degree of risk to a significant number of workmen; the common work area concept does not require subcontractors to be working on the same site at the same time, but that employees of two or more subcontractors eventually work in the area.

3. NEGLIGENCE — MASTER AND SERVANT — SUBCONTRACTOR'S NEGLI-
   GENCE — GENERAL CONTRACTORS — RETAINED CONTROL OVER
   WORK.

   A general contractor or landowner may be held liable for a
   subcontractor's negligence where the general contractor or
   landowner effectively has retained a high degree of actual
   control over the work involved; general oversight or monitoring
   is insufficient; whether control has been retained is a question
   of fact for the jury.

4. NEGLIGENCE — MALPRACTICE.

   A malpractice claim requires proof of simple negligence based on
   a breach of a professional standard of care; although expert
   testimony is usually required to establish the applicable stan-
   dard of conduct and its breach, no expert testimony is required
   where the negligence claimed concerns a matter of common
   knowledge and interpretation or can be inferred through the
   doctrine of res ipsa loquitur.

5. TRIAL — VOIR DIRE — REFERENCES TO INSURANCE.

   References to the insurance coverage of either party during voir
   dire is presumptively improper; the presumption may be rebut-
   ted, however, and any error may be found to be harmless.

6. WITNESSES — EXPERT WITNESSES.

   A person may be qualified to testify as an expert witness by
   virtue of knowledge, skill, experience, training, or education in
   the subject matter; purely speculative expert testimony should
   be excluded; the decision regarding the admission of expert
   testimony is reviewed for an abuse of discretion (MRE 403,
   702).

7. TRIAL — JURY — STANDARD JURY INSTRUCTIONS.

   A trial court, when requested, must give standard jury instruc-
   tions that are applicable and accurately state the law; refusal
   to give a requested instruction does not require reversal unless
   the failure to vacate the jury verdict would be inconsistent with
   substantial justice.

8. TRIAL — WITNESSES.

   A trial court has broad power to control the manner in which
   witnesses are examined; the mode and order of interrogation is
   within the court's discretion (MRE 611).

9. MOTIONS AND ORDERS — REMITTITUR.

   A trial court may grant remittitur where the amount awarded by
   a jury is greater than the highest amount of damages that the
   evidence at trial would support; the court should consider

whether the verdict was induced by bias or prejudice, but should limit its inquiry to objective considerations relating to the actual conduct of the trial or to the evidence presented.

*Foster, Meadows & Ballard, P.C.* (by *Robert G. Lahiff*), and *Eugene C. Tenney,* for the plaintiffs.

*O'Leary, O'Leary, Jacobs, Mattson & Perry, P.C.* (by *John P. Jacobs*), for the defendants.

Before: MICHAEL J. KELLY, P.J., and HOOD and T. R. THOMAS,* JJ.

MICHAEL J. KELLY, P.J. Plaintiffs sued defendants for the wrongful death of their son, who was killed in an accident during the construction of defendant Mazda's automobile factory on January 4, 1986. The jury returned a verdict of $3,300,000 against defendants. Defendants moved for a new trial, judgment notwithstanding the verdict (JNOV), and remittitur, which the trial court denied on May 25, 1990. Defendants appeal as of right. We affirm.

I

Defendant Mazda is the owner of the real estate where decedent was killed. Defendant Kajima was the general contractor for the construction of Mazda's factory on that property. Defendant Andrew Elliot & Associates was the architect and engineer for the project. Decedent was a structural ironworker employed by Steelcon, Inc., a subcontractor hired through another subcontractor, Haven-Busch Company.

Decedent worked as a "connector." His job was to connect the top of vertical columns in the structural framework of the factory with horizon-

* Circuit judge, sitting on the Court of Appeals by assignment.

tal steel beams or trusses as they were lowered onto the columns by a crane. The trusses were between sixty and seventy feet long and weighed about seven tons.

On January 4, 1986, decedent connected two trusses to the top of column PU-P5, which stood about thirty-seven feet high. The other ends of the trusses were placed atop different columns. After the first truss was connected and freed from the crane, decedent walked along the second truss to release it from the crane. While disconnecting that truss, column PU-P5 leaned north, then fell, carrying the trusses with it. Decedent was thrown from the steel framework and pinned underneath a fallen truss. The beam almost cut decedent in half. Decedent remained conscious for about thirty minutes until the truss was removed. He was then rushed to the hospital, where he died from his injuries.

The columns in the structural framework were secured by "shim packs," groups of thin metal plates or "shims" that were inserted on top of the concrete caissons and anchor bolts at the base of the columns. Because the concrete caissons were not always poured to exact specifications, shims of varying thickness were used to stabilize the column. The shims were not fastened onto the caissons, but were held in place by the weight of the columns.

II

Defendants assert several grounds upon which a directed verdict or JNOV should have been granted. First they allege that the decedent's work duties were not inherently dangerous.

The general rule is that an employer of an independent contractor is not liable for the con-

tractor's negligence. An exception exists where the independent contractor is hired to do work that either necessarily involves danger to others unless great care is used or poses a peculiar risk of harm to others. *Bosak v Hutchinson,* 422 Mich 712, 727-728; 375 NW2d 333 (1985); *Kulp v Verndale Products, Inc (On Remand),* 193 Mich App 524, 529-530; 484 NW2d 699 (1992); 2 Restatement Torts, 2d, §§ 416, 427. In Michigan, this duty applies to independent contractors and employees of independent contractors as well as third parties on the premises. *Warren v McLouth Steel Corp,* 111 Mich App 496, 503-504; 314 NW2d 666 (1981). The special risk of danger must be recognizable in advance, at the time the work is contracted, in order to invoke the doctrine.

> [T]he rule here stated applies only where the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of his contract. It has no application where the negligence of the contractor creates a new risk, not inherent in the work itself. [Restatement, § 427, comment d, p 417.]

See also *Bosak, supra* at 728. The question whether a job is inherently dangerous is a question of fact for the jury. *Warren, supra* at 503-504.

On the basis of the evidence at trial, we believe not only that a question of fact existed concerning whether decedent's work was inherently dangerous but also that the evidence actually weighed decisively in favor of the jury's conclusion regarding this issue. Decedent's job as a connector required him to connect trusses sixty feet in length and seven tons in weight while standing on top of columns thirty-seven feet high. On the basis of his

twenty-two years' experience as an ironworker, Steelcon's superintendent testified as follows:

> In the erection of structural steel, the people that are probably in the highest degree of jeopardy are the connectors. And probably in their worst situation is when a column is erected and not tied in [in] any direction.

Additional testimony revealed that connectors such as decedent cannot even be tied with a safety line during their work. The only effective safety measure to prevent falls is to limit their time on top of the columns. When trusses are placed on a column, they lack stability, particularly when a person walks on top of them, and it is necessary to brace, shore, or guy the column to prevent collapse. The columns in this case did not have temporary bracing, shoring, or guying; instead, they were supported by shim packs. Cf. *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972).

### III

Defendants' second basis for challenging the trial court's denial of their motions for a directed verdict and JNOV is grounded in the common work area rule.

The common work area rule provides that a general contractor may be liable for a subcontractor's negligence where the general contractor fails to take reasonable precautions against "readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Plummer v Bechtel Construction Co,* 440 Mich 646, 666; 489 NW2d 66 (1992). See also *Johnson v Turner Construction Co,* 198 Mich App 478, 480; 499 NW2d 27

(1993). It is not necessary for other subcontractors to be working on the same site at the same time. Rather, the common work area concept merely requires that employees of two or more subcontractors eventually work in the area.

Testimony at trial established that the employees of several subcontractors worked in the same area as Steelcon but were kept clear of Steelcon's work area while the steel framework was being erected. Other tradesmen were working close by at the time of the collapse, and a truck made a delivery to Steelcon's work area while the framework was being constructed that day. Several tradesmen were working in the area both before and after Steelcon's work. Under *Johnson, supra,* this was sufficient to support a finding that a common work area existed.

IV

Defendants also urge there was insufficient evidence that defendants had retained or exercised control over the work site or the construction of the steel framework. With regard to defendant Kajima, we disagree.

A general contractor or landowner may be held liable for a subcontractor's negligence where the general contractor or landowner effectively retains control over the work involved. *Plummer, supra* at 659; *Funk v General Motors Corp,* 392 Mich 91, 101, 105; 220 NW2d 641 (1974); *Johnson, supra* at 480. There must be a high degree of actual control; general oversight or monitoring is insufficient. *Plummer, supra* at 660-661. Whether a general contractor or landowner had retained control is a question of fact for the jury. *Id.* at 664.

With respect to defendant Mazda, there was no evidence that Mazda retained any degree of con-

trol over the construction of its factory. Nonetheless, defendant Mazda's motion for a directed verdict and JNOV were properly denied because Mazda could still be liable under the inherently dangerous activity doctrine.

With respect to defendant Kajima, plaintiffs presented sufficient evidence of Kajima's control over the steel framework construction. Kajima's own employees testified that Kajima was responsible for establishment and enforcement of safety policies on the job site. Kajima had over fifty employees on site working with subcontractors, including Steelcon. Kajima employed a safety director on the site, who was responsible for ensuring adherence to state safety regulations, and Kajima had the right to stop work if safety precautions were ignored. It also made decisions about some of the specifics of Steelcon's work, including the decision to use shim packs to secure the columns.

On the basis of this evidence, reasonable jurors could conclude that Kajima retained control of Steelcon's work.

V

Defendants argue that plaintiffs failed to prove professional malpractice on the part of defendant Andrew Elliot & Associates.

A malpractice claim requires proof of simple negligence based on a breach of a professional standard of care. See *Patterson v Kleiman,* 199 Mich App 191, 192; 500 NW2d 761 (1993). Expert testimony is usually required to establish the applicable standard of conduct and its breach. *Law Offices of Lawrence J Stockler, PC v Rose,* 174 Mich App 14, 48; 436 NW2d 70 (1989). However, no expert testimony is required where the negli-

gence claimed is a matter of common knowledge and interpretation or where negligence can be inferred though the doctrine of res ipsa loquitur. *Thomas v McPherson Community Health Center,* 155 Mich App 700, 705; 400 NW2d 629 (1986).

At trial, the court found no need for expert testimony, and defendants cite this decision as error. However, the ruling was inoperative. Plaintiffs did present expert testimony. The expert witness, Constancio Miranda, stated that Elliot, as structural engineer for the project, had a duty to observe and monitor the steel framework construction and the forces applied to the steel. In fact, Elliot's contract with Kajima provided that Elliot would observe construction in the field. The expert noted that such a monitor would continually take into account all of the forces on the structural steel framework and make sure that whatever erection procedure was adopted did not violate any assumptions in the design. The expert also stated that the erection procedure employed on the date of decedent's death increased the danger of an accident one thousandfold and that the framework should have been boxed in.

In light of this expert testimony, we conclude that plaintiffs carried their burden of proving the applicable standard of professional care and its breach.

VI

Defendants also challenge on several grounds the trial court's decision to deny their motion for a new trial. Their first challenge is based on the size of the award and remarks by plaintiffs' counsel about liability insurance during trial.

Where a party's substantial rights are at stake, a trial court may grant a new trial for several

reasons, including an excessive award of damages, jury misconduct, an irregularity or error of law in the proceedings, and a verdict against the great weight of the evidence. MCR 2.611(A)(1). The grant or denial of a new trial is reviewed for an abuse of discretion. *Bosak, supra* at 737.

References to the insurance coverage of either party during voir dire is presumptively improper. MCL 500.3030; MSA 24.13030; *Kokinakes v British Leyland, Ltd,* 124 Mich App 650, 652-653; 335 NW2d 114 (1983). However, this presumption may be rebutted and any error regarded as harmless. *Id.*

During voir dire, plaintiffs' counsel asked jurors whether they or any family members were involved in the insurance business. Two jurors responded affirmatively, and plaintiffs' counsel asked them whether they worked in the field of liability insurance. Defendants objected, and the trial court asked plaintiffs' counsel to refrain from such questioning. The court also found that the questions thus far had not tainted the jury panel. Plaintiffs' counsel nonetheless asked one more potential juror whether any family members worked in the insurance business and, upon hearing an affirmative answer, dismissed the juror by peremptory challenge.

Our review of the voir dire transcripts convinces us that any improper remarks by plaintiffs' counsel were harmless. They did not mention or suggest that any party was insured. The impression that defendants had "deep pockets" in this case was inevitable from the sheer size of the construction project and the reputation of its owner, Mazda, and not from the remarks of plaintiffs' counsel. Except for the questioning of one juror, which appears to have been inadvertent, plaintiffs'

counsel heeded the trial court's admonition regarding further questions pertaining to insurance.

Defendants also challenge the propriety of a statement by plaintiffs' expert witness who, during cross-examination by defense counsel, testified that he accepted responsibility for his own projects and carried insurance "to the tune of one million dollars." Again, such a comment did not address whether any party was insured, and there is nothing to suggest that plaintiffs' counsel "staged" the witness' response to defense counsel's question.

Any improper references to liability insurance were harmless.

VII

Defendants' second argument in favor of a new trial is based on the trial court's refusal to strike the testimony of Steelcon's superintendent, who gave an expert opinion regarding the cause of the collapse.

A person may be qualified to testify as an expert witness by virtue of his knowledge, skill, experience, training, or education in the subject matter of the testimony. MRE 702. Where such testimony is purely speculative, it should be excluded or stricken pursuant to MRE 403. *McDonald v Stroh Brewery Co,* 191 Mich App 601, 607; 478 NW2d 669 (1991). A trial court's decision to admit expert testimony under MRE 702 or to exclude it as speculative is reviewed for an abuse of discretion. *Berryman v K mart Corp,* 193 Mich App 88, 98; 483 NW2d 642 (1992); *Harrison v Grand Truck W R Co,* 162 Mich App 464, 469; 413 NW2d 429 (1987).

Steelcon's superintendent at the construction site testified at trial that, in his opinion, the only thing that could have caused the collapse was a

shim pack shifting or giving way from under the base of column PU-P5, which leaned north to start the collapse. At an earlier deposition, this witness admitted on cross-examination that his opinion regarding the cause of the collapse was speculation. On the basis of this answer, defense counsel moved to strike the witness' testimony at trial. The trial court denied the motion.

We do not believe that the trial court abused its discretion. The witness had twenty-two years' experience in ironwork. This was sufficient to qualify him as an expert witness under MRE 702. Despite the characterization to the contrary, his opinion was not speculative. It arose from reasonable inferences and deductions based on his extensive experience with structural ironwork and his observation of the site after the accident. Whether this opinion was speculative is a legal conclusion that the witness was not in a position to make. Rather, the trial court must evaluate the content of the opinion and its grounds and make its own determination. It is more likely that the witness' statement was an honest admission that his opinion was merely an opinion.

### VIII

Defendants next claim that the persistence of plaintiffs' counsel in arguing the "Golden Rule" in both opening and closing arguments improperly appealed to the sympathy of jurors and provides grounds for a new trial. However, we note that defendants never objected to the challenged arguments. Thus, we deem the issue waived on appeal. *Snell v UACC Midwest, Inc,* 194 Mich App 511, 517; 487 NW2d 772 (1992). Furthermore, we have reviewed the record and see no potential for a miscarriage of justice in declining to review the issue.

IX

Defendants contend that the jury's finding of no comparative fault was against the great weight of the evidence and is therefore grounds for a new trial.

Our review of the trial testimony and exhibits reveals nothing to indicate that decedent was negligent in the performance of his duties as a connector. Moreover, defendants provide no authority for attributing to decedent any negligence on the part of decedent's employer, Steelcon, in failing to stabilize the columns securely or to follow construction regulations. As the Supreme Court stated in *Funk, supra,* at 113 (quoting *Koenig v Patrick Construction Corp,* 298 NY 313, 318-319; 83 NE2d 133 [1948]):

> "Workmen such as the present plaintiff, who ply their livelihoods on ladders and scaffolds, are scarcely in a position to protect themselves from accident. They usually have no choice but to work with the equipment at hand, though danger looms large."

The jury's finding of no comparative negligence was not against the great weight of the evidence.

X

Defendants base their next argument in favor of a new trial on the trial court's refusal to use their proposed instructions, based on SJI2d 12.06, and its use of SJI2d 10.08 instead. We disagree.

When requested by a party, a trial court must give standard jury instructions if they are applicable and if they accurately state the law. MCR 2.516(D)(2); *Constantineau v DCI Food Equipment, Inc,* 195 Mich App 511, 516; 491 NW2d 262 (1992).

The refusal to give such instructions does not require reversal unless the failure to vacate the jury verdict would be inconsistent with substantial justice. *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985).

SJI2d 12.06 provides that a jury may consider regulatory violations as evidence of comparative negligence. The record reveals no evidence that decedent personally violated any safety regulations. Thus, SJI2d 12.06 is inapplicable to this case, and the trial court properly refused to give the instruction. Furthermore, defendants' proposed instruction misstated both SJI2d 12.06 and Michigan law by suggesting that negligence by Steelcon could be attributed to decedent in determining decedent's comparative negligence.

SJI2d 10.08 provides that where a decedent is unable to testify because of his death, the jury may infer that he exercised ordinary care for his safety at and before the time of his injury. Again, there was no evidence that decedent was comparatively negligent. Thus, reading SJI2d 10.08, while inapplicable to the case, was harmless error at best.

XI

Defendants maintain that a new trial is necessary to cure error resulting from the trial court's refusal to allow defense counsel to lead two witnesses who were called by plaintiffs under the adverse party rule. We disagree.

Under MRE 611, a trial court has broad power to control the manner in which witnesses are examined. *Hartland Twp v Kucykowicz,* 189 Mich App 591, 595; 474 NW2d 306 (1991). The mode and order of interrogation is within the trial court's discretion. *Id.*

At trial, plaintiffs' counsel called Andrew Elliot, of defendant Andrew Elliot & Associates, and an employee of defendant Kajima as witnesses under the adverse witness statute, MCL 600.2161; MSA 27A.2161. Because these were essentially witnesses for the defense, the trial court did not abuse its discretion in denying defense counsel's request to employ leading questions. Moreover, a review of the trial transcript reveals that defense counsel did in fact use leading questions with these witnesses, even over the objection of plaintiffs' counsel.

## XII

Defendants base their final argument for a new trial on the allegedly excessive award of damages. Alternatively, defendants request a substantial remittitur.

A trial court may grant remittitur to reduce the jury's verdict where the amount awarded is greater than the highest amount of damages that the evidence at trial would support. MCR 2.611(E)(1); *Palenkas v Beaumont Hosp,* 432 Mich 527, 531-532; 443 NW2d 354 (1989). A trial court should consider a number of factors, including whether the jury's verdict was induced by bias or prejudice. However, the trial court's inquiry should be limited to objective considerations relating to the actual conduct of the trial or to the evidence presented. *Palenkas, supra* at 532. In determining the proper amount of an award of damages, the trial court may consider the pain and suffering experienced by a decedent while conscious between the time of injury and his resulting death. *Byrne v Schneider's Iron & Metal, Inc,* 190 Mich App 176, 180; 475 NW2d 854 (1991).

Although the jury's award of $3,300,000 was a substantial sum, it was not greater than the highest amount of damages supported by the evidence. Decedent was only twenty-two years old, in good health, and gainfully employed in a skilled trade. His death was slow and undoubtedly painful. He was pinned and nearly severed by a seven-ton steel truss. His legs were crushed like an accordion. Yet, he remained conscious for about thirty minutes while trapped under the weight of the truss. Given these facts, we cannot say that remittitur was mandatory.

Affirmed.