*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLENN BARBER,

        Plaintiff-Appellee,

v

LOMBARDO HOMES OF S.E. MICHIGAN, LLC,

        Defendant/Third-Party Plaintiff/Appellant,

and

ULTIMATE FRAMING CO, LLC,

        Defendant/Third-Party Defendant,

and

MIDWEST INTERIORS, LLC,

        Third-Party Defendant/Fourth-Party Plaintiff,

and

PACIFIC DRYWALL, LLC,

        Fourth-Party Defendant.

UNPUBLISHED
January 24, 2019

No. 341193
Washtenaw Circuit Court
LC No. 15-000971-NO

Before: SERVITTO, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

General contractor Lombardo Homes of S.E. Michigan, LLC (defendant) appeals by right the trial court's August 11, 2017 judgment on a jury verdict in this negligence action. It bases its appeal on three claims of error: the denial of its motion for summary disposition, denial of its

motion for judgment notwithstanding the verdict (JNOV), and admission of certain evidence in the trial itself. We affirm.

## I.  BACKGROUND

Plaintiff worked as a drywall inspector for the defendant's Chandi home construction project in Ypsilanti, Michigan. Defendant was the general contractor, owner and construction manager for the Chandi construction project. Defendant contracted with Midwest Interiors, LLC to install drywall for the construction project which in turn sub-contacted with plaintiff through his corporation Pacific Drywall, LLC to do inspection and quality control at the site.

Plaintiff was injured when he fell through a porch hole cover at defendant's construction site. He filed a negligence suit against defendant under the "common-area-work doctrine." Plaintiff alleged that defendant was liable for his injuries as the general contractor of the site for having neglected to construct a proper and secured walkway over the front entrance porch hole and failing to adequately supervise and inspect the work site for unsafe conditions.

Defendant moved for summary disposition contending that there was no genuine issue of material fact that plaintiff could not prove the porch hole cover was not properly secured and that it was a danger to a significant number of workers. Plaintiff opposed the motion and argued that questions of fact existed regarding whether defendant inspected the porch hole cover on a daily basis and as to the amount of tradesmen that were exposed to the danger in the common work area.

The trial court denied defendant's motion, agreeing with plaintiff that questions of fact existed as to both defendant's liability and the number of workers exposed to the unsafe work conditions. It also held that defendant's challenge to the admission of the photograph of the debris, as being speculative as to the length of time the cover was unsecured, went to the weight of the evidence and not its admissibility. The case proceeded to trial where a jury found in plaintiff's favor. Defendant moved for JNOV that was also denied.

## II.  SUMMARY DISPOSITION

Defendant first argues it was entitled to summary disposition under MCR 2.116(C)(10) on plaintiff's common-area-work-doctrine claim. We disagree.

## A.  STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 120-121; 97 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a

genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Id.* at 120].

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## B. ANALYSIS

"At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 48; 684 NW2d 320 (2004). In *Funk v Gen Motors Corp*[1], our Supreme Court created an exception to this rule called the common-work-area doctrine. A claim of negligence under the doctrine requires the plaintiff to prove:

> (1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Ormsby v Capital Welding, Inc*, 471 Mich 45, 57; 684 NW2d 320 (2004) citing *Funk*, 392 Mich at 104.]

The plaintiff's failure to establish any one of these four elements is fatal to a *Funk* claim. *Ormsby*, 471 Mich at 59 n 11. In this case, defendant challenges the trial court's findings that a question of fact existed as to the second element, and that plaintiff proved a significant number of workers existed under the third element.

We agree with the trial court's finding that a question of fact existed concerning whether the defendant failed to guard against readily observable and avoidable dangers. At the time the motion for summary disposition was filed, the court was presented with conflicting evidence regarding whether defendant took the proper precautions to guard against the danger of an unsecured porch hole cover and whether that danger was readily observable. The plaintiff's testimony that he fell through the unsecured plywood porch hole cover when he exited the home through its front door after a brief inspection was uncontested. Nor was any evidence offered to contradict his statement that he had initially entered that home through its garage at approximately 9:00 a.m. that morning. David Fritts, the defendant's safety supervisor, gave deposition testimony that the porch hole cover was inspected when it was first installed and on a daily basis thereafter. He testified that at all times it was found to be properly secured. He additionally testified that he walked over the porch hole cover with the homeowner the day before plaintiff's accident, without incident. Plaintiff however, offered a photograph taken by Fritts approximately a half an hour after plaintiff's fall that showed debris on the cement ledge between the house and the cover. The owner of Ultimate Framing, the company that installed the porch cover, Robert Geck, provided testimony that a properly secured porch hole cover was abutted directly up to the home's foundation to prevent a gap for debris to collect on the ledge.

---

[1] 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro–Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1982).

Geck further testified upon review of Fritts' photo that the amount of debris that had accumulated on the ledge was an indication that the cover had been unsecured for quite a while. He also testified that an unsecured cover would have been noticeable from the driveway or sidewalk. According to Geck, it was common for items to drop in the gap between the cover and the home's foundational wall and for tradespersons to remove the cover to retrieve them. Geck observed the porch hole cover after the accident and testified that the direction of the nails was indicative of the cover having been pulled off. Defendant argued that the debris seen on the photograph could have been lodged there when the plaintiff fell, when first responders rescued plaintiff, or from someone having swept out the house. Thus, the court had evidence before it that created material questions as to when the porch hole cover became dislodged and whether the dislodged state was observable and avoidable. Courts "may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646–647; 680 NW2d 453 (2004); see also *Foreman v Foreman*, 266 Mich App 132, 135–136; 701 NW2d 167 (2005). Viewing the evidence in a light favorable to plaintiff, reasonable minds could differ on whether defendant guarded against the danger of an unsecured porch hole cover and whether the danger was readily observable based on the evidence presented at the time of defendant's motion. Accordingly, the trial court correctly ruled that summary disposition on the second *Funk* element was inappropriate.

Defendant next claims that the trial court erred in finding that plaintiff presented evidence that satisfied the third *Funk* element, that there were a significant number of workers exposed to a high degree of risk. Again, we disagree with defendant. There was no dispute that an unsecured porch hole cover presented a high degree of risk of falling into the porch hole and that this would be a dangerous condition on the jobsite. Defendant contended the number of workers at risk should be calculated at the time the plaintiff was injured while plaintiff argued the focus was on all the workers exposed to the risk in the course of the construction project.

Identifying the appropriate danger is the first step to determining whether a significant number of workers were exposed to the same relevant peril. *Latham v Barton Malow Co*, 480 Mich 105, 108; 746 NW2d 868 (2008). The danger in this instance was traversing an unsecured porch hole cover. In examining this issue, we follow the instruction from *Ormsby* that "[t]he high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed." 471 Mich at 60 n 12. In this endeavor, the Court must "distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Hughes*, 227 Mich App at 6. *Hughes* advised that four workers was an insufficient amount to constitute a significant number. 227 Mich App at 8. Further, *Alderman* held that "two to six employees of one subcontractor, including the plaintiff" was not a significant amount of workers. *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906; 780 NW2d 840 (2010).

Plaintiff testified that at the time of his injury, there was a hanging crew of four to five workers inside the house and a laborer delivering scaffolding next door; all were Midwest employees. Thus, if the number of workers was to be determined on the day and time of the incident the number would not meet the *Alderman* threshold. However, neither *Alderman* nor *Hughes* view the determination of the extent of exposure to a danger from the lens of the day, date, and time when an actual injury occurs. In other words, it is not necessary for other

-4-

subcontractors to be working on the same site at the same time. Rather, the common work area concept merely requires that employees of two or more subcontractors eventually work in the area. *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 408; 516 NW2d 502 (1994), abrogated on other grounds by *Ormsby*, 471 Mich 45; 684 NW2d 320 (2004). It is in this light that we review the testimony regarding the number of workers exposed to the danger.

Fritts testified the porch hole cover was installed on September 3, 2014 by Ultimate Framing's rough carpenters as part of the framing process. Geck testified that the cover was secured when his crew completed framing on September 11, 2014. According to Fritts' testimony concerning the construction process, after Geck left, between 17 and 21 tradespersons would have traversed the porch hole cover between September 11 and plaintiff's October 3 fall. In accord with both *Hughes* and *Alderman*, this was a significant number of workers. Defendant maintained that not all those workers were exposed to the risk because Fritts was inspecting the porch hole cover daily during this same period up until the day before plaintiff's accident and found it to be secure. It is true that no one testified to when the cover actually became unsecured; however, that was a question for the jury to determine because its resolution rested on Fritts' credibility. *Burkhardt*, 260 Mich App at 646-647. Viewing this evidence in a light most favorable to plaintiff, it raised a genuine issue of material fact regarding whether a significant number of workers were exposed to a high degree of risk.

## III. JNOV

Defendant next argues it was entitled to JNOV. We disagree.

### A. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for JNOV. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 284; 602 NW2d 854 (1999). This Court will "view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts presented preclude judgment for the nonmoving party as a matter of law." *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997). "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Morinelli v Provident Life & Acc Ins Co*, 242 Mich App 255, 260-261; 617 NW2d 777 (2000).

### B. ANALYSIS

Defendant argues that it was entitled to JNOV because the jury's verdict was legally and logically inconsistent. In *Granger v Fruehauf Corp*, 429 Mich 1; 412 NW2d 199 (1987), our Supreme Court instructed that, "every attempt must be made to harmonize a jury's verdicts" and that, "[o]nly where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside." *Id*. at 9. A verdict is not inconsistent "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." *Id*. at 7.

Defendant specifically asserts that the jury's answer to Question No. 3 on the verdict form was in direct conflict with plaintiff's testimony and the court's instruction regarding the third element of the common-area-work doctrine. Question No. 3 on the jury verdict form asked,

"Did the unsecured porch hole cover create a high degree of risk to a significant number of workers?" and the court instructed, "that six or less workmen is not a significant number of workmen, as a matter of law." Defendant asserts that because the plaintiff's testimony only provided for there being five to six workers at the home the morning of plaintiff's accident, the jury's conclusion was unsupported. Below, the trial court held that the testimony of Fritts and Geck, if believed by the jury, supported the *Funk* elements having been met. We agree.

The evidence presented at trial supported the jury's verdict that the unsecured porch hole cover created a high degree of risk to a significant number of workers. Plaintiff testified that at the time he fell, there was a drywall crew of four to six people and a laborer inside the home. Plaintiff's testimony differed slightly from his deposition where he testified that the crew was between four and five workers and the laborer was at the home next door. Defendant belabors this difference, but it is nonconsequential when Fritts testified, as he did by deposition, that there were roughly 17 to 21 other tradespersons who would have traversed the porch hole cover to come in and out of the home. As previously discussed, this was a significant number of workers according to *Hughes* and *Alderman*. Further, Fritts testified that it was defendant's responsibility to keep the jobsite safe, that an unsecured porch hole would be a very dangerous condition on the jobsite, that an unsecured cover would create a high degree of risk to a significant number of workers, and that the porch was a common work area. Thus, the jury had evidence that a significant number of workers were exposed to the identified danger.

## IV. EVIDENTIARY ERROR

Defendant last argues it is entitled to a new trial based on evidentiary error. Again, we conclude otherwise.

### A. PRESERVATION OF ERROR AND STANDARD OF REVIEW

"To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal." *Nahshal v Fremont Ins Co*, 342 Mich App 696, ___; ___ NW2d ___ (2018). Defendant partially preserved this issue for appeal by objecting to the admission of the photograph in the trial court at defendant's motion hearing for summary disposition, and at trial, on grounds that the evidence was speculative and was not authenticated. Defendant did not argue below that the photograph was unfairly prejudicial.

We review for an abuse of discretion the trial court's decision to admit or deny evidence; "[h]owever, when the trial court's decision to admit evidence involves a preliminary question of law, the issue is reviewed de novo." *Barnett v Hidalgo*, 478 Mich 151, 158–159; 732 NW2d 472 (2007). We also review for an abuse of discretion a trial court's decision on a motion for a new trial. *Poirier v Grand Blanc Tp*, 192 Mich App 539, 547; 481 NW2d 762 (1992). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 689; 777 NW2d 511 (2009). "A close evidentiary ruling ordinarily cannot be an abuse of discretion." *Barr v Farm Bureau Gen Ins Corp*, 292 Mich App 456, 458; 806 NW2d 531 (2011). Additionally, "[a]n error in the admission or the exclusion of evidence ... is not ground for ... vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice," MCR 2.613(A), or affects a substantial right of an opposing party, MRE

103(a). We review unpreserved claims of evidentiary error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (2005). Defendant's substantial rights are affected when the error was outcome determinative. *Id*. at 763.

## B. ANALYSIS

Defendant challenges the admissibility of Fritts' photograph of the porch hole on three grounds, first, that the photograph was not probative, second that the photograph was unfairly prejudicial, and third, that the photograph was admitted without proper authentication. We conclude that none of these grounds establishes that the trial court abused its discretion in admitting the photograph.

Evidence must first be relevant to be admissible. MRE 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Negligence may be established by circumstantial evidence as well as by direct proof and they are equally competent, their relative convincing powers being for the jury to determine." *Spiers v Martin*, 336 Mich 613, 616; 58 NW2d 821 (1953). "To a certain extent, circumstantial evidence is admissible to prove what cannot be proved otherwise." *Forncrook Mfg Co v E T Barnum Wire & Iron Works*, 63 Mich 195, 208; 29 NW 537 (1886). In this case, Fritts and Geck testified that the porch hole cover must have been unsecured for plaintiff to fall in the hole. However, it was unknown when and for how long it was detached. Plaintiff's photograph of the accumulation of debris on the ledger was relevant to the issue of how long the porch hole cover was dislodged. Even without Geck's testimony that the accumulation was indicative of the cover having been off for quite a while, an inference to that effect could have been argued from the photograph itself. The value given the photograph and the inference to be drawn from it was up to the jury. *Loveland v Nelson*, 235 Mich 623, 625; 209 NW 835 (1926). The jury also could have reasonably inferred from the photograph that Fritts had not inspected the porch cover as he testified.

Defendant next argues that the photograph was inadmissible because it was unfairly prejudicial. Even if relevant, evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Defendant contends that the photograph "allowed the Plaintiff to portray Lombardo – without any basis in testimony – as an irresponsible general contractor who allowed this messy looking condition to exist on its site for some unspecified period of time." This argument is new on appeal and therefore reviewed for plain error. *Carines*, 460 Mich at 763, 774. First, we note that plaintiff, Fritts, and Geck testified that defendant's motto was safety first. Plaintiff also testified that he did not doubt that Fritts, as defendant's safety inspector, was at the site daily inspecting for safety concerns and Geck testified that defendant was "[o]ne of the best" when it came to general contractors. Further, no one used the photograph to argue that defendant was an irresponsible general contractor. Instead, the argument was that this was an instance of failure, not a pattern of practice. The argument of undue prejudice and improper inference fails for these reasons.

Defendant last challenges the admission of the photograph under MRE 901. MRE 901 provides that, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). "Our evidentiary rules do not require the proponent to sustain this burden in any particular fashion." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017). "Michigan courts have interpreted MRE 901(a) as requiring the proponent only to make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be." *Id*. Defendant claims that Fritts' photograph was inadmissible because it purported to depict the condition of the porch hole cover for a significant period before the accident without corroborating testimony. Defendant is incorrect. For authentication purposes, plaintiff only purported to show that the photograph depicted the ledger shortly after plaintiff's accident. It was by Geck's testimony that plaintiff would ask the jury to infer that the accumulation of debris on the ledger meant the cover had been unsecured for quite a while. Plaintiff authenticated the photograph through Fritts' testimony. Fritts testified that he was the individual responsible for investigating the scene of the accident and that he took that particular photograph with his cellular phone as part of his investigation. He further testified that he took the photograph within one hour of his arrival to the scene and that he had arrived as the EMS was leaving with plaintiff. By this testimony, plaintiff fulfilled the requirement of authentication.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra